# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| STELLA JONES TOOSON, | Case No. 1:09-cv-449 |
| Plaintiff, | |
| vs. | Magistrate Judge Timothy S. Black |
| WINTON WOODS CITY SCHOOL DISTRICT, *et al.*, | **MEMORANDUM OF OPINION AND ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANTS** |
| Defendants. | |

This civil action is before the Court on Plaintiff's motion for summary judgment (Doc. 17) and Defendants' memorandum in opposition (Doc. 20). Also pending before the Court is Defendants' counter motion for summary judgment (Doc. 21) and Plaintiff's memorandum in opposition (Doc. 23).[1] The parties have consented to final adjudication by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 19). For the reasons that follow, the Court **DENIES** Plaintiff's motion for summary judgement and **GRANTS** Defendants' counter motion for summary judgment.

---

[1] Plaintiff also filed a motion for clarification regarding the dispositive motion deadline. (Doc. 24). The parties mutually proposed a dispositive motion deadline of January 15, 2010. (Doc. 16). Plaintiff timely filed her motion for summary judgment on December 31, 2009 (Doc. 17). Defendants filed their counter motion for summary judgment on January 25, 2010. Fed. R. Civ. P. 56(a)(2) permits a motion for summary judgment to be filed "after . . . (2) the opposing party serves a motion for summary judgment." The general trial procedures and calendar order in this case do not expressly remove the opportunity for cross-motions established by Fed. R. Civ. P. 56(a)(2). This Court has discretion to entertain the cross-motion for summary judgment. *Reed. v. Rhodes*, 179 F.3d 453 (6th Cir. 1999) ("[d]istrict courts have wide discretion to manage their own dockets and to decide issues which have consumed considerable resources"). Moreover, the cross-motion relies heavily on the admissions and omissions of Plaintiff's own motion. Therefore, Plaintiff's motion for clarification (Doc. 24), which is construed as a motion to strike, is **DENIED**.

## I. BACKGROUND

Plaintiff alleges that she was discriminated against on the basis of her age and gender when she was assigned to work in a make-shift classroom. Defendants deny such claims and assert that Plaintiff's classroom assignment was the result of a legitimate lack of available classroom space elsewhere in the building and lack of funds to make cosmetic improvements.

## II. UNDISPUTED FACTS

On January 2, 2006, Plaintiff began employment with Winton Woods City School District as a substitute teacher. During the 2007-2008 school year, Steve Denny, Principal of Winton Woods Elementary School, interviewed Plaintiff and recommended that the Winton Woods Board of Education hire her to work in his building as a building substitute teacher. (Doc. 21, Ex. 1 at ¶ 2). As a building substitute teacher she was guaranteed daily work in the same building as opposed to a casual substitute who was not guaranteed daily work or work in the same building within the District. (*Id*. at ¶ 3). Plaintiff was assigned to provide reading intervention to at risk students three days a week and to supervise students assigned to the school's alternative school assignment ("ASA"),[2] two days a week. (*Id*. at ¶ 6).

Plaintiff's employment began the same year the District closed one of its elementary schools as a cost savings measure, and re-configured its remaining elementary

---

[2] This was similar to an in school suspension/detention program.

school buildings from Kindergarten through sixth grade buildings to grade level buildings. (Doc. 21, Ex. 1 at ¶ 7). The Elementary School housed every third and fourth grade student district wide under this new configuration. (*Id*. at ¶ 9). At that particular time, the Winton Woods Elementary School building had a total of 25 classrooms and eight office rooms. (*Id*. at ¶ 8). Enrollment at that time exceeded projections for students. (*Id*. at ¶ 9). As a result, every existing classroom in the building and all existing office rooms in the building were occupied. (*Id*.) Plaintiff did not have a designated space to run the school's ASA program for which Plaintiff was hired. (*Id*.) After brainstorming possible solutions to the lack of space problem, Mr. Denny determined that an unused space in the school's first level could be used. (*Id*. at ¶ 10). While admittedly this was not an ideal arrangement, Mr. Denny believed it was the most cost effective way to resolve his need for space. (*Id*.)

Prior to reconfiguration, the first level had only been used as a maintenance storage area. (Doc. 21, Ex. 1 at ¶ 10). School began August 28, 2008. Plaintiff spent approximately the first two weeks of school performing non-ASA functions in the building, as teachers had not yet begun assigning students to ASA. (*Id*. at ¶ 12). As a result, she did not spend a significant amount of time in the ASA room except to fix it up. (*Id*.) During this time, Plaintiff asked Mr. Denny whether he could have the area painted. (*Id*. at ¶ 11). Mr. Denny explained that he did not have funds budgeted for cosmetic improvements, but suggested Plaintiff hang a few posters on the wall in order to make the

area look more welcoming for students. (*Id*. at ¶ 12). He provided a few "Character Counts" posters to Plaintiff; however, she never used them. (*Id*.)

Some time in mid-September, Plaintiff complained to Mr. Denny about cleaning supplies/chemicals in the area, and requested that they be removed because they bothered her. (Doc. 21, Ex. 1 at ¶ 13). This complaint coincided with Plaintiff filing an anonymous nuisance complaint report with the Hamilton County General Health Department. The complaint, dated September 20, 2007, alleged "mold and chemicals in basement room of school. Class being held in this room. Room is near janitor's closet and across from cafeteria." (*Id*. at 7). On September 27, 2007, Inspector Mandy Bartel from the Health Department inspected the area. (*Id*.) There was no finding of mold or mildew. (*Id*.) However, Ms. Bartel did find the area was poorly ventilated and cited janitorial chemicals, clutter, and a barrel of light bulbs as problematic. (*Id*.) As a result, the District removed the clutter, chemicals, and light bulbs, installed fans, and decided to paint the walls. (*Id*.) Upon re-inspection, the case was closed and the report indicated abatement. (*Id*.)

On October 24, 2007, Plaintiff called in sick to work and never returned, despite several telephone conversations indicating that she would. (Doc. 21, Ex. 1 at ¶ 15). Mr. Denny spoke to Plaintiff on the phone on October 28, 2007 about her health. (*Id*.) At that time, she indicated that she had a respiratory infection and was going to a doctor for care. (*Id*. at ¶ 17). Mr. Denny did not question her about a return date to work during this

conversation.  (*Id.*)  Mr. Denny again spoke to Plaintiff on the phone on November 15, 2007.  (*Id.* at ¶ 18).  During this conversation, she indicated that she would likely return to work on November 19, 2007.  (*Id.* at ¶ 19).  When Plaintiff did not report to work on the 19th, Mr. Denny called her on November 20, 2007.  (*Id.*)  Plaintiff indicated during that phone conversation that she would return to work on November 26, 2007.  (*Id.*)  The two discussed her lingering health concerns and agreed it would be best if she resolved her health issues before returning.  (*Id.*)  Plaintiff did not return to work on November 26, 2007.  Mr. Denny called her on November 28, 2007.  (*Id.* at ¶ 20).  During this conversation, Plaintiff indicated to Mr. Denny that she did not feel comfortable working in the ASA room.  (*Id.*)  Mr. Denny responded that she did not need to work there, and could instead do reading intervention on Mondays, Wednesdays, and Fridays, and perform regular building substitute duties on Tuesdays and Thursdays.  Mr. Denny communicated to Plaintiff that she still had a position with the District.  (*Id.* at ¶ 21).

During Plaintiff's absence beginning October 24, 2007, through the end of the 2007-2008 school year, students who would have been assigned to Plaintiff's class for ASA were sent to the office instead.  (Doc. 21, Ex. 1 at ¶ 22).  The building secretaries along with the Assistant to the Principal supervised the students.  (*Id.*)  Mr. Denny did not replace Plaintiff for the remainder of the school year, as he was not entirely sure whether she intended to return to work or not.  (*Id.* at ¶ 23).  As a result, Plaintiff was maintained as a substitute teacher for the remainder of the school year.  (*Id.*)  She appeared on the

District's active substitute data base referred to as AESOP, Mr. Denny kept her on his building roster, and kept her mail box in the building. (*Id.*, *see also* Ex. 2). At no time did he indicate to Plaintiff that she was being terminated.

Sometime on or around January 25, 2008, more than a month after his last conversation with Plaintiff, Mr. Denny received a phone call from a reporter from *The Cincinnati Herald* questioning him about Plaintiff and the circumstances behind the ASA classroom and Health Department report. (Doc. 21, Ex. 1 at ¶ 24). Several days later, a front page spread captioned "Teacher complains about students' treatment at Winton Woods Elementary" appeared in the Herald with a color photo of Plaintiff. (*Id.* at ¶ 24). The article referred to Plaintiff as "a former Winton Woods elementary school teacher." (*Id.* at ¶ 26). While neither Mr. Denny nor the Board of Education had previously received a formal letter of resignation from Plaintiff, Mr. Denny interpreted the article as Plaintiff's implicit resignation. (*Id.*) However, he did not take any affirmative steps to recommend Plaintiff's termination from employment with the Board of Education. (*Id.*) Furthermore, it is noteworthy to mention that Plaintiff was an at will employee. (*Id.* at ¶ 4).

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV.  ANALYSIS

### A.  Age and Gender Discrimination

Plaintiff claims that Defendants discriminated against her on the basis of her age and gender in violation of federal law. Specifically, she claims that summary judgment should be granted in her favor because she and three other women over the age of 40 were required to work in a make-shift classroom while others outside of the protected class were not and because accident reports were filed for other employees and not for her.

Under 42 U.S.C.§ 2000e *et seq.*, an employee may prove that gender and/or age played a part in an employer's decision by using direct evidence or circumstantial evidence. *Allen v. Ethicon, Inc*., 919 F.Supp. 1093, 1098 (S.D. Ohio 1996). In this case,

Plaintiff's claims rely on indirect or circumstantial evidence. "Evidence is direct when it consists of statements by a decision maker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000).

Without direct evidence, circumstantial evidence will support a discrimination case when it meets the test set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first proffer a *prima facie* case of age and gender discrimination. To make a *prima facie* claim, the plaintiff must allege sufficient facts showing that: (1) she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that similarly situated non-protected employees were treated more favorably; and (4) that age and gender were the factor in the defendant's decision." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the decision. *See McDonnell Douglas*, 411 U.S. at 802. Under *McDonnell Douglas*, the burden of production may shift from the plaintiff to the defendant, but the burden of persuasion remains with the plaintiff throughout the analysis. *See Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1390 (6th Cir. 1993). If the defendant meets this burden, then the presumption created from the *prima facie* case drops out and plaintiff has "an opportunity to prove . . . that the proffered reasons were not the true reason for the employment decision, but were

a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 248 (1981). *See also, St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993); *Brown v. EG&G Mound Applied Technologies*, 117 F. Supp. 2d 671, 677 (S.D. Ohio 2000).

Plaintiff concedes that she has no direct evidence of age or sex discrimination, and she must therefore rely on the indirect burden-shifting framework set forth in *McDonnell Douglas*. "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that he or she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." *Blair v. Henry Filters*, 505 F.3d 517, 529 (6th Cir. 2007).

There is no dispute that Plaintiff is a member of the protected class (over the age of 40 and female). Accordingly, the three elements of the *prima facie* case analysis in dispute are: (1) whether Plaintiff suffered an adverse action when she resigned from her position; (2) whether similarly situated non-protected employees were treated more favorably; and (3) whether there is evidence, albeit disputed, from which reasonable jurors could conclude that Plaintiff's gender and age were determining factors.

    **1.    Adverse action**

"An adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus.*

*v. Ellerth*, 524 U.S. 742, 761 (1998). In the instant action, however, Plaintiff's employment status did not change as a result of Defendants' action. Plaintiff, herself, resigned. Although not expressly stated, the adverse action upon which Plaintiff appears to rely is constructive discharge, which unlike the more common adverse actions, requires proof of intolerable working conditions and proof of the employer's intention to force resignation. *Logan v. Denny's Inc*., 259 F.3d 558, 568-69 (6th Cir. 2001). *See also Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 n.10 (6th Cir. 1999) ("working conditions [were] . . . so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.").

Here, the Plaintiff fails to evidence any facts that she was either forced to work in intolerable conditions or that it was Defendants' intention to force her resignation. First, the District remedied the condition of the ASA room where Plaintiff was assigned. (Doc. 21, Ex. 1 at ¶ 7). Despite the improvements, Plaintiff still claimed that she did not feel comfortable working in the ASA room. (*Id*. at ¶ 20). In response to her concern, Mr. Denny told her that she did not have to work in the ASA room, and that he would make other arrangements. (*Id.* at ¶ 21). Additionally, the District kept her position open from October 24, 2007 through the end of the school year, despite the fact that she was absent beginning October 24, 2007. (*Id*. at ¶ 23). Moreover, even when Mr. Denny was made aware of an article that referred to Plaintiff as "a former Winton Woods elementary school teacher," he did not take any affirmative steps to recommend Plaintiff's

termination from employment. (*Id*. at ¶ 26). For the reasons discussed above, the Plaintiff having failed to any evidence any facts that she was constructively discharged, the Court finds, as a matter of law, that Plaintiff resigned her position voluntarily.

### 2. Similarly situated employees treated more favorably

In order to satisfy the similarly-situated requirement, a plaintiff must demonstrate that the comparable employee is similar "in all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

The classroom area and the assignment Plaintiff was given was the only position of its kind in the building. She was the only at will substitute teacher assigned to supervise ASA two days a week. Plaintiff attempts to compare herself generally with all other teachers in the building who were employed full time under limited and continuing contracts, licensed to teach as opposed to licensed to substitute teach, assigned to teach academic subjects, and protected by a Negotiated Agreement with the local teachers union which conferred certain rights and privileges Plaintiff did not have.

Plaintiff relies on speculation and peripheral facts that do not support the inference of discrimination. She states "[f]or example: an incident report was written up for a person named Green who slipped on steps, DeWesse who twisted an ankle, Sadowsky who slipped on snow in the parking lot, Busken who was bitten by a student, DeSalvo who cut her finger while peeling an apple." (Doc. 17 at 10). Plaintiff is not similarly situated to these employees for several reasons. First, they all submitted written/

electronic accident reports on their own, consistent with District policy. Plaintiff did not. Second, the individuals are all full time employees under contract with the District and members of the District's collective bargaining unit. Plaintiff is not. Finally, in direct contradiction to Plaintiff's attempt to demonstrate age and gender discrimination, they are all female and over age forty, and are therefore within Plaintiff's protected class.

Accordingly, Plaintiff has failed to present evidence that similarly situated employees were treated more favorably.

### 3. Discriminatory animus

Finally, Plaintiff is unable to provide any evidence that age and gender played a role in the District's employment decision. Plaintiff claims that three other women over the age of 40 (Mary Stallworth, librarian, age 58; Jeanie Burnett, teacher, age 57; and Parwine Qayoumi, librarian, age 47) were exposed to the same "environment" that she was, because they were "hand picked" by Mr. Denny to "relieve me for lunch." (Doc. 23 at 8). However, Plaintiff failed to present any evidence that there were other staff and/or teachers outside of the protected class, who were available to relieve Plaintiff for lunch. Therefore, Plaintiff has failed to establish that age and gender played a role in assigning individuals to the ASA room.

Additionally, Defendants assert that there was no available space within the building to run ASA, and Plaintiff acknowledges that Mr. Denny told her there were not sufficient funds to make substantial cosmetic improvements in the area. Plaintiff notes

that even after being cited by the health department, the District "skimped on the repairs" and did what was minimally required to abate the problems. However, the evidence shows that the District removed the clutter, chemicals, and light bulbs, installed fans, and painted the walls. Upon re-inspection, the report of the health inspector indicated abatement and closed the case. (Doc. 21, Ex. 1 at ¶ 7). Moreover, Mr. Denny spoke to Plaintiff on numerous occasions regarding her lingering health concerns and absence from school. (*Id*. at ¶ 21). In fact, when Plaintiff indicated to Mr. Denny that she did not feel comfortable working in the ASA room, he told her that she did not need to work there. (*Id*.)

Plaintiff has offered no evidence to establish discrimination. Therefore, the Court is unable to draw an inference from the evidence that the Plaintiff's age or gender was a factor in her treatment. Accordingly, the Court finds that Plaintiff has failed to establish any of the three elements of a *prima facie* case of age or gender discrimination as required in order to survive Defendants' motion for summary judgment.

### B.     Work Place Exposure

Plaintiff's complaint appears to make a "work place exposure" claim in order to recover damages for what she believes made her ill. Work place exposure is not a matter properly before this Court because it is not a federal question and this Court does not have subject matter jurisdiction to hear it. Moreover, Plaintiff's workplace exposure claim is barred under the doctrine of *res judicata*. Prior to filing a Charge of Discrimination with

the EEOC and a complaint for discrimination with this Court, Plaintiff unsuccessfully attempted to obtain unemployment benefits. Upon being denied and learning that she should instead pursue relief under the State's workman's compensation system, she unsuccessfully brought a claim before the Ohio Workman's Compensation Bureau and the Industrial Commission for the State of Ohio. (Doc. 21 at 8-9). Plaintiff's claims were denied. Her federal complaint appears to be nothing more than a request for money damages from Defendants to pay for what she believes made her sick.

### C. Jarod's Law

Plaintiff makes reference to Jarod's Law[3] in her motion for summary judgment. However, she fails to present any evidence of any specific violation. Moreover, that law, which has since been repealed by the Ohio State Legislature,[4] did not offer a private cause of action for money damages. Again, this Court is without subject matter jurisdiction to address Plaintiff's state claim under Jarod's Law.

### D. No Child Left Behind

Similarly, Plaintiff makes reference in her motion for summary judgment to

---

[3] Jarod's Law concerns inspections of public and nonpublic school buildings by boards of health and requires the Director of Health to establish the School Health and Saftey Network to coordinate school inspections and to include school safety and sanitary inspections within the practice of environmental health for registered sanitarians. H.B. 203.

[4] The law was repealed as of October 16, 2009, due to the costs to local school districts which had been struggling with finding ways to meet all of the law's requirements.

alleged violations of the No Child Left Behind Act ("NCLB").[5] Such reference is unsupported by any evidence and is irrelevant to any analysis under Title VII and/or the ADEA. Moreover, NCLB does not provide a private cause of action for money damages. *Newark Parents Ass'n v. Newark Public Schools*, 547 F.3d 199, 209 (3rd Cir. 2008).

### E. Use of Restraints

Finally, Plaintiff alleges in her motion for summary judgment that Winton Woods City School District improperly restrained students. However, she fails to support this claim with any evidence.

### IV. CONCLUSION

Based on the evidence of record, the Court finds that there are no genuine issues of material fact for trial, and that Defendants are entitled to judgment as a matter of law on all counts of the complaint. Accordingly, it is hereby **ORDERED** that: (1) Plaintiff's motion for summary judgment (Doc. 17) is **DENIED**; (2) Defendants' counter motion for summary judgment (Doc. 21) is **GRANTED**; and (3) this case is **CLOSED**.

Date: April 6, 2010            s/ Timothy S. Black
                                           Timothy S. Black
                                           United States Magistrate Judge

---

[5] NCLB is an act to close the achievement gap with accountability, flexibility, and choice, so that no child is left behind. Pub. L. 107-110 (Jan. 8, 2002).